**CITY OF BURLESON, Appellant,**

v.

**Floyd BARTULA, et al., Appellees.**

**No. 10–02–334–CV.**

Court of Appeals of Texas, Waco.

June 11, 2003.

---

E. Allen Taylor, Jr., Taylor, Olson, Adkins, Sralla & Elam, L.L.P., Ft. Worth, for appellant.

Michael J. Rogers, Michael J. Rogers, P.C., Cleburne, for appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Forty-six individuals and one business (the Appellees) filed a petition in district court in Johnson County for a declaratory judgment and application for temporary injunction in opposition to the City of Burleson's notice that it would annex property owned by the Appellees as well as others who were not named as plaintiffs. Appellees filed suit on November 6, 2002, about a week before a public meeting on November 14, at which, according to a notice previously given, Burleson would

vote on the annexation. After a hearing, the trial court granted a temporary injunction based on its findings that (1) Burleson's "population" was under 25,000, (2) thus its extraterritorial jurisdiction (the area in which it was authorized to annex property) was one mile, (3) there was a probability of irreparable harm from Burleson's annexing property outside the one-mile limit, (4) there was no adequate remedy at law, and (5) all other complaints raised by the Appellees were about procedural violations in the annexation process, which can only be raised in a quo warranto proceeding. The court entered an order enjoining Burleson from annexing any property outside its one-mile extraterritorial jurisdiction (ETJ). Burleson appeals from the interlocutory order granting a temporary injunction. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2003).

We will reverse the temporary injunction order and render an order denying the application for a temporary injunction.

### What We Will Address

Appellees contended in their petition that the annexation was illegal because it included property outside Burleson's ETJ and it violated numerous statutory annexation procedures. Burleson, citing *Alexander Oil Co. v. City of Seguin,* argued at the injunction hearing that the complaints about procedure can be raised only through a quo warranto proceeding. *Alexander Oil Co. v. City of Seguin,* 825 S.W.2d 434, 436 (Tex.1991); TEX. CIV. PRAC. & REM.CODE ANN. ch. 66 (Vernon 1997). Appellees responded that the rule in *Alexander Oil* applies only after an annexation has occurred. The trial court, agreeing with Burleson, granted the injunction solely on the basis of the complaint that some property in the proposed annexation area is outside of Burleson's ETJ. Neither party appeals from the trial court's decision

not to consider the procedural violations, because complaints of procedural violations may be raised only by quo warranto. Therefore, we do not address any procedural violation that Appellees may contend Burleson committed in the annexation process.

### The Issues on Appeal

Burleson is a home-rule municipality. As such it has the statutory authority to annex property to increase its geographical boundaries. TEX. LOC. GOV'T CODE ANN. § 43.021(2) (Vernon 1999). But it may annex property only within its ETJ. *Id.* § 43.051. The ETJ of a municipality with 5,000 "inhabitants" or more but under 25,000 is one mile, and that of a municipality with 25,000 "inhabitants" or more but under 50,000 is two miles. *Id.* § 42.021.

Burleson complains on appeal that:

1. The trial court used the wrong measure of "inhabitants" to determine the ETJ.

2. In the alternative, if the ETJ is one mile, Burleson intends to annex only those of the sixteen parcels that are within its ETJ, and the moment that annexation is completed, the remaining tracts would instantly become within a newly created one-mile ETJ, and they could then be annexed. Therefore an injunction is premature, because there is only an assumption that the city council will annex all the tracts at once, rather than in a sequence of annexations.

3. Injunctive relief was improper because Appellees did not prove (1) they had an interest in the property sought to be annexed, and (2) they would suffer irreparable harm from the annexation.

4. The injunction order is void because it is conclusory and does not contain

fact findings about irreparable harm and no adequate remedy at law.

We will address only the first issue, which we find dispositive.

### Standard of Review

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*; TEX. CIV. PRAC. & REM.CODE ANN. § 65.011 (Vernon 1997).

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 58. A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion. *Id.* The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204; *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985). A trial court has no discretion to determine what the law is. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

### Did the Trial Court Incorrectly Determine the Number of Inhabitants?

Burleson complains that Appellees did not establish by evidence a probable right to the relief sought, because the trial court applied the wrong rule of law to determine Burleson's ETJ. There were no witnesses at the hearing. The parties stipulated to the admissibility of documents and maps and to what witnesses for Burleson would testify about the basis for the population figure it proposed.

The parties do not dispute that, if the number of inhabitants of Burleson exceeds 25,000, then all the property sought to be annexed is within two miles of Burleson's city limits and therefore within its ETJ. But if the number of inhabitants is under 25,000, then part of the property sought to be annexed lies outside the one-mile ETJ.

Appellees urged the trial court to rely on census figures. They presented four at the hearing: (1) from the 2000 census of the United States Census Bureau, which found the population to be 20,976; (2) from the 1990 census of the United States Census Bureau, which found the population to be 16,113; (3) from the 2000 census of the North Central Texas Council of Governments, which found the population to be 21,263; and (4) from the 2002 census of the North Central Texas Council of Governments, which found the population to be 22,700.

Burleson argues that the trial court was bound to accept the city's determination of the number of its inhabitants. On February 24, 2000, Burleson passed a resolution stating that its "population" was 25,575.[1] The resolution states that the figure is based on:

> [P]opulation estimates, forecasts, counts and analysis from the Department of Rural Sociology at Texas A & M, the North Central Texas Council of Governments, the U.S. Bureau of Census, County Records from Johnson County

---

1. Burleson says that, as used in the resolution, "population" is synonymous with "inhabitants."

and Tarrant County, Water Utility Connection Information from all certified water or waste water service providers serving areas within the corporate limits of the City, electric utility service connection information for customers within the [city], domestic natural gas service connections for customers within the [city], information on school population for [the city], new building permit issuance records for the periods [from 1995 to 2000], Certificate of Occupancy issuance records [from 1995 to 2000], together with all other available records including mapping and aerial. . . .

Burleson relies on *State v. City of La Porte*, 386 S.W.2d 782, 785–86 (Tex.1965). There, the issue was whether La Porte was a home-rule municipality with the power of annexation. *Id.* at 783. The central question was whether its population was over 5,000, which the Texas Constitution requires for home-rule status. *Id.* The trial court submitted a special issue to the jury about the population over the city's objection and its assertion that its own finding about its population—having been made in good faith, and there being no proof of fraud—should have been accepted by the court. *Id.* at 784. The Supreme Court held that La Porte had the authority to determine its population. *Id.* at 785. It described the inherent problem in using census figures which may be out-of-date by the time they are needed. *Id.* at 786. It stated: "This conclusion is strongly supported in all Texas cases, which have come to our attention, wherein the question of determination of population of a city is involved." *Id.* The Court concluded by quoting a holding from a case involving a statute authorizing municipalities over 2,000 in population to regulate certain utilities:

"[T]he ascertainment of the fact of the requisite population is committed to the governing body of the city or town . . . .

[I]t must be presumed that [the city] did determine the fact of the existence of the necessary population, and such presumed finding can only be attacked on the ground of fraud, and that this ground must be both pleaded and proven by the [complaining] party . . . ."

*Id.* at 786–87 (quoting *City of Farmersville v. Texas–Louisiana Power Co.*, 33 S.W.2d 272, 276 (Tex.Civ.App.-Dallas 1930), *rev'd on other grounds*, 67 S.W.2d 235 (Tex. Com.App.1933)). The Court said the holding "can and should be applied with equal force in determining the issue in the present case." *Id.* at 786.

Appellees have not presented us with any authority contrary to *La Porte*. And there is no suggestion that Burleson's determination of its population, which in this context is the number of its inhabitants, was conducted fraudulently. Therefore, the trial court should have accepted it.

Appellees do, however, urge us to rely on the definition of "population" in the Code Construction Act: " 'Population' means the population shown by the most recent federal decennial census." TEX. GOV'T CODE ANN. § 311.005(3) (Vernon 1998). They say that the terms "inhabitants" and "population" are interchangeable in the statutes. They find support for that argument in sections 257.113 and 257.119 of the Transportation Code in which the term "inhabitants" was changed to "population" when the provisions were codified in the Transportation Code. TEX. TRANSP. CODE ANN. §§ 257.113, 257.119 (Vernon Supp.2003).

We do not find Appellees' argument persuasive. In the absence of a definition of the legislative use of the term "inhabitants," *La Porte* is the controlling authority. By not applying *La Porte*, the trial court abused its discretion in finding that

Burleson's ETJ was one-mile instead of two miles. *Butnaru*, 84 S.W.3d at 204.

We sustain Burleson's issue. We do not reach its other issues.[2]

### Conclusion

Having sustained Burleson's issue regarding the determination of the number of its inhabitants, we reverse the order for temporary injunctive relief and deny Appellees' application for a temporary injunction.

**2.** Neither does our opinion reach matters which may subsequently arise based, *e.g.,* on amended pleadings or additional discovery.